## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: | ) |
| | ) Case No. 09-12600 MER |
| MARTY E. GLASER | ) |
| | ) Chapter 7 |
| Debtor. | ) |
| | ) |
| ——————————————— | ) |
| | ) |
| DARRELL G. THRAILKILL, and | ) Adversary No. 09-1291 MER |
| VICTORIA A. JOSLYN, individually, and | ) |
| as former shareholders of M & G | ) |
| REMODELERS, | ) |
|     Plaintiffs/Counter-Defendants, | ) |
| | ) |
| v. | ) |
| | ) |
| MARTY E. GLASER, | ) |
|     Defendant/Counter-Claimant | ) |
| and | ) |
| JANICE E. STEINLE, as Chapter 7 | ) |
| of the bankruptcy estate of Darrell | ) |
| G. Thrailkill, | ) Signed/Docketed |
|     Defendant. | ) April 30, 2012 |

## ORDER

This adversary proceeding involves a dispute between former business associates. The Plaintiffs, who purchased stock in the Debtor's company, were engaged in pre-petition litigation with the Debtor in the Jefferson County District Court and the Colorado Court of Appeals. The parties filed competing motions for summary judgment based on that litigation. After oral argument and additional briefing by the parties, the Court finds and concludes as follows.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(a) and (b) and 28 U.S.C. § 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), as it involves the determination of the dischargeability of a particular debt.

## BACKGROUND FACTS

Defendant Marty Glaser ("Glaser") owned 100% of the stock in M & G Remodelers, Inc. ("M & G")  from May 2003 through April 1, 2004.  M & G operated a "fix and flip" home construction business.  Plaintiffs Thrailkill and Jocelyn ("Plaintiffs") purchased a 49% interest in M & G on April 1, 2004.  The parties' primary dispute arose with Glaser's attempt to sell his stock in M & G to a third party in July, 2004.  Pursuant to the parties' Stock Purchase Agreement, Glaser's stock in M & G was offered first to the third party, then to the Plaintiffs. Neither purchased the stock, and the Plaintiffs sued in state court, asserting an absolute right to become the majority shareholders. The stock was never sold, and M & G closed in 2007 and was dissolved in 2009.

On September 24, 2004, the Plaintiffs filed a case entitled *Darrell G. Thrailkill and Victoria A. Joslyn, individually and as shareholders of M & G Remodelers, Inc. v. M & G Remodelers, Inc. and Marty E Glaser,* Case No. 2004 CV 304, in the District Court for Jefferson County, Colorado  (the "State Court Action").[1]  The Second Amended Complaint in this suit included the following claims for relief: 1) for unpaid wages or compensation; 2) for unjust enrichment; 3) for violations of the Colorado Corporate Code; 4) for breach of contract; 5) for fraud; 6) for breach of fiduciary duty by Glaser to M & G; 7) for Glaser's breach of fiduciary duty to the Plaintiffs; 8) for exemplary damages; 9) for cancellation of contract and specific restitution; 10) for declaratory judgment as to the rights of the parties with respect to the parties' stock purchase agreement; 11) for accounting and distribution as to M & G; 12) for indemnification of M & G from Glaser; and 13) for a finding Glaser used M & G as an alter ego, rendering Glaser liable for M & G's obligations.[2] [3]

On August 30, 2005, Judge Stephen M. Munsinger of the Jefferson County District Court issued an Order denying a motion for summary judgment filed by the Plaintiffs seeking the dismissal of the State Court Defendants' first counterclaim and for judgment in the Plaintiffs' favor on their Fourth and Tenth claims for relief (the "First State Court S/J Order").[4]  Two days later (on September 1, 2005), the Plaintiffs filed a

---

[1]  *Complaint* (Docket No. 1), Exhibit A thereto, *Verified Complaint* filed in the Jefferson County District Court.

[2]  *See Motion Incorporating Authority for Summary Judgment and Motion for Summary Judgment as a Sanction* (Docket No. 61) (Plaintiff's original Motion), Exhibit 1 thereto, *Verified Second Amended Complaint* filed in the Jefferson County District Court, dated March 9, 2005.

[3]  For future reference in this opinion, Glasser and M & G may be collectively referred to as the "State Court Defendants."

[4]  See Docket No. 97, Glaser's *Response to Plaintiff's Motion for Summary Judgment*, Exhibit D thereto, *First State Court S/J Motion*; See also Docket No. 88, Supporting Documents relating to Glaser's *Amended Motion for Summary Judgment* (Docket No. 83), Jefferson County District Court Order of August 30, 2005.

second partial summary judgment motion, this time seeking the dismissal of the State Court Defendants' affirmative defenses and the second, third, fourth, and fifth counterclaims (the "Second State Court S/J Motion"). Paragraphs 9 and 10 of the Second State Court S/J Motion indicate the Plaintiffs' requests for admission should be deemed admitted under COLO. R. CIV. P. 36.[5]

On September 20, 2005, Judge Munsinger granted the Second State Court S/J Motion, finding no response had been filed, and finding the requests for admission must be deemed admitted.[6]  He also ordered the setting of a hearing on damages.

On November 8, 2005, Judge Munsinger granted the relief sought in a different motion filed by the Plaintiff to dismiss the State Court Defendants' first counterclaim.[7]  In that Order, the Court found "[l]iability has been entered in favor of Plaintiff on their fourth claim in addition to all other claims."[8]  The Court vacated the jury trial scheduled in the matter, but continued the hearing on damages.

A two-day hearing on damages was conducted after which Judge Munsinger issued his *Findings of Fact and Conclusions of Law*, and a judgment.[9]  Glaser appealed.

---

[5]  See Docket No. 97, *Glaser's Response to Plaintiff's Motion for Summary Judgment*, Exhibit E thereto, *Motion for Partial Summary Judgment Dismissing Defendants' Affirmative Defenses and Second, Third, Fourth, and Fifth Counterclaims for Relief, and Entering Judgment on Liability in Favor of Plaintiffs and Against Defendants, Jointly and Severally, with Citation to Legal Authority*, dated August 24, 2005, but filed-stamped September 1, 2005.  Paragraph 11 of the Second State Court S/J Motion specifically indicates it does not address the Defendants' First Counterclaim for Relief because the Counterclaim was addressed in a previous motion.

[6]  *See* Docket No. 88, Supporting Documents relating to Glaser's *Amended Motion for Summary Judgment* (Docket No. 83), Jefferson County District Court Order of September 20, 2005.  *See also Defendant Martin Glaser's Response to Plaintiffs' Motion for Summary Judgment* (Docket No. 97),  Exhibit B thereto, Order of Jefferson County District Court dated September 20, 2005.

[7]  *See* Docket No. 88, Supporting Documents relating to Glaser's *Amended Motion for Summary Judgment* (Docket No. 83), Jefferson County District Court Order dated November 8, 2005.

[8]  *Id.*

[9]  *See Complaint* (Docket No. 1), Exhibit B thereto, *Findings of Fact and Conclusions of Law* issued by Judge Stephen M. Munsinger, dated March 15, 2006 (the "Damages Order).  *See also Amended Complaint* (Docket No. 16), Exhibit C thereto, *Entry of Judgment and Specific Restitution Order*, also dated March 15, 2006, awarding judgment in favor of the Plaintiffs and against Glaser and M & G in the amount of $20,451.18 for unpaid salary, expenses, statutory penalty, and accrued interest; $143,611.03 for Plaintiffs' stock purchase price and accrued interest for a total judgment amount of $164,062.21 for Plaintiffs' compensatory damages, plus an award of $30,000 for exemplary damages (the "Damages Judgment").  The Damages Judgment also directed the Plaintiffs to submit a bill of costs and affidavit of attorneys' fees.

On December 6, 2007, the Colorado Court of Appeals reversed and remanded the Damages Judgment.[10]

At the hearing on remand, Judge Munsinger stated on the record:[11]

Based upon the remand and what I'm supposed to do, I am to consider the partial summary judgment or the summary judgment that they vacated as to whether or not it should be reinstated.

The Court finds that given the findings that they said were not made and should be made pursuant to Rule 36D, the Court finds that relieving the defendant from the admissions, if we canceled the admissions and placed the admissions found that they were all denied and were not admitted, that would not assist this Court in reaching any further decision on the merits because given all the other evidence in the case by affidavit and the (not audible) that by relieving the (not audible) from the merits would not (not audible) the reaching of the merits on this case.

I also find, and to the extent these are a little nonconsistent because that's the way Rule 36D seems to be and whether or not I would find that, as we tried to do the first time, whether the plaintiffs would be prejudiced by cancelling these admissions or going back and relieving defendants from the admissions would severely prejudice and would unduly delay final judgment and resolution of this case.

I make those findings. Therefore, the summary judgment is reinstated.  I do reinstate the summary judgment.[12]

On February 23, 2009, Glaser filed his voluntary Chapter 7 petition.  The Plaintiffs filed their *Verified Complaint to Determine Dischargeability of Debt and for Determination of Respective Rights* (the "Complaint") against Glaser on May 26, 2009,

---

[10]  *Defendant Martin Glaser's Response to Plaintiffs' Motion for Summary Judgment*, Exhibit D thereto, Opinion of Colorado Court of Appeals dated December 6, 2007 (docketed in this adversary proceeding as Docket No. 98).

[11]  The order on remand (the "Remand Order") was not a written order, but consisted of the transcript of the proceedings on June 5, 2008.  See Transcript of Electronically Recorded Proceedings before the Jefferson County District Court, June 5, 2008, attached as an Exhibit to Docket No. 98, *Documents filed in Support of Glaser's Amended Motion for Summary Judgment*.

[12]  Transcript of Electronically Recorded Proceedings before the Jefferson County District Court, June 5, 2008, attached as an Exhibit to Docket No. 98, *Documents filed in Support of Glaser's Amended Motion for Summary Judgment*, p. 4, line 14–p. 5, line 17.

alleging claims under 11 U.S.C. §§ 523(a)(2), (4) and (6).[13]  In the Complaint, the Plaintiffs state the $194,062 judgment, based on the Remand Order of June 5, 2008, involved Glaser's breach of fiduciary duty and tortious conversion of funds.

On February 2, 2010, the Plaintiffs filed the *Amended Complaint to Determine Dischargeability of Debt and for Determination of Respective Rights Complaint*, revising the amount they allege to be nondischargeable (the "Amended Dischargeability Complaint").  The Amended Dischargeability Complaint asserts that, notwithstanding the Court of Appeals' reversal of part of the state court judgment, the Plaintiffs are still entitled to judgment in the amount of  $158,257.62, which is nondischargeable.[14]  The Amended Dischargeability Complaint also seeks the determination of the amount of interest held by the Plaintiff Darrell Thrailkill's own case trustee, Janice Steinle.[15]

## MOTIONS BEFORE THE COURT

### Plaintiffs' Motions for Summary Judgment

Both the Plaintiffs' original *Motion Incorporating Authority for Summary Judgment and Motion for Entry of Judgment as a Sanction* ("Plaintiffs' Original Motion") (Docket No. 61) and *Supplement to Plaintiffs' Motion for Summary Judgment* ("Plaintiffs' Supplemental Motion") (Docket No. 80), contend that although the state court did not conduct a full trial on liability, a judgment of liability was entered against Glaser on summary judgment as a sanction for failure to comply with discovery orders.  The Plaintiffs further allege Glaser participated in the early 2006 hearings on damages, and argue the Court of Appeals did not overturn any of the earlier factual findings made by Judge Munsinger, but simply found the Judge had misapplied the law with respect to sanctions and the value of unpaid wages to Mr. Thrailkill.

---

[13]  Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[14]  Specifically, Paragraph 38 of the Amended Dischargeability Complaint states Glaser is indebted to the Plaintiffs based on the Jefferson County District Court's Order contained in the transcript of June 5, 2008, as follows:

    a) $125,000.00 for funds wrongfully converted from the purchase price of the stock;
    b) $18,611.03 in pre-judgment interest;
    c) $9,609.19 in compensation to Thrailkill based upon the doctrine of quantum meruit;
    d) $2,955.58 in unpaid business expenses;
    e) $2,081.82 in pre-judgment interest;
    f) Other pre-judgment interest from March 5, 2006 to June 8, 2008;
    g) Interest on the judgment at the statutory rate from June 5, 2008.

[15]  Plaintiff Darrell Glen Thrailkill filed Chapter 7 Case No. 09-10969 SBB on January 23, 2009. Thrailkill listed the judgment against Glaser as personal property in an undetermined amount on his Amended Schedules.  The Trustee in Thrailkill's case has not asserted an interest in the judgment.

The Plaintiffs further contend they are entitled to a finding that the judgment against Glaser is nondischargeable under § 523(a)(2), (4), and (6) because Judge Munsinger found at the hearing on remand that even had the Debtor's denials of the requests for admission been allowed, the outcome of the case would have been the same.  According to the Plaintiffs, this case is similar to *Melnor, Inc. v. Corey*,[16] in which the Tenth Circuit Court of Appeals found it was appropriate for a court to apply collateral estoppel to cases from other courts when an issue of fact or law was determined by an actual and final judgment, the determination was essential to the judgment, and the judgment was not entered because of the debtor's failure to contest the issue but because his efforts in contesting it were abusive.  The Plaintiffs assert Glaser's conduct in the State Court Action and in this adversary proceeding has been abusive and he has a history of ignoring and refusing to comply with discovery requests, like the litigant in the *Melnor* case.

According to the Plaintiffs, Judge Munsinger's Damages Order contained the following findings of fact which bind this Court, and require a finding of nondischargeability under § 523(a)(2)(A) and (B), (a)(4), and (a)(6):

- Glaser intentionally and materially misrepresented his corporation's financial condition and other material facts which were reasonably relied on by the Plaintiffs.

- Glaser breached his fiduciary duties to the corporation and failed to pay Plaintiff Thrailkill salary and expenses.

- Glaser's sale of 49,000 shares of the stock to the Plaintiffs was a recapitalization, not a personal sale of Glaser's stock.

- The checks used to purchase the stock were wrongfully deposited by Glaser in a noncorporate account and used for his personal expenses, constituting a fraudulent transfer.

- The Debtor knew the Form 1099 and K-1 issued to Thrailkill stated amounts not paid.

- Glaser acted in an illegal, oppressive, and fraudulent manner toward the Plaintiffs, and his conduct was willful, wanton, and attended by circumstances of fraud.[17]

---

[16]  583 F.3d 1249, 1250 (10th Cir. 2009).

[17]  *See Complaint*, Docket No. 1, Exhibit B thereto, *Findings of Fact and Conclusions of Law* issued by Judge Stephen M. Munsinger, dated March 15, 2006, pp. 3-4.  In the Findings of Fact and Conclusions of Law, Judge Munsinger awarded the Plaintiffs judgment of $125,000 plus interest at the statutory rate from April 1, 2004 for the amount paid for the stock, plus unreimbursed business expenses

Moreover, the Plaintiffs' Supplemental Motion states Glaser provided answers to requests for admission, as ordered by this Court, which indicated he participated in the State Court Action, and final judgment has been entered with no appeal currently pending.  The Plaintiffs argue Glaser's assertion his attorneys were responsible for his failure to reply to discovery in the State Court Action does not excuse Glaser's behavior or make collateral estoppel inapplicable.  Specifically, the Plaintiffs' Supplemental Motion points out the state court judgment found Glaser had the opportunity to present evidence that the alleged damages were not incurred, but failed to do so.  In addition, the Plaintiffs dispute Glaser's assertion the reversal of the state court judgment by the Colorado Court of Appeals removes the state court findings from the application of collateral estoppel.  The Plaintiffs' Supplemental Motion also argues the Court of Appeals did not reverse any specific findings of fact, but reversed only the application of law relating to the issue of partial summary judgment as to liability based on late-filed discovery responses, and states Judge Munsinger correctly followed the mandate of the Court of Appeals by concluding the result would have been the same had the discovery responses been allowed.

In addition, the Plaintiffs' Supplemental Motion states Glaser's responses to requests for admission concede he was the president of M & G and notes Glaser produced copies of the parties' stock purchase agreement and checks for the purchase of stock.  Glaser has failed to admit or deny he transferred the $125,000 paid by the Plaintiffs to his personal account, but the Plaintiffs point out the state court found he did so.  Further, the Plaintiffs argue Glaser clearly violated his fiduciary duty to the corporation and to the Plaintiff Thrailkill as a shareholder.  They state COLO. REV. STAT. §§ 7-8-401 and 7-8-402 provide that the president and majority shareholder of a small or closely held corporation has a fiduciary duty to the corporation and other shareholders.

Glaser's *Response to the Plaintiffs' Motions* (Docket No. 97), asserts Glaser's original counsel failed to respond to the first state court summary judgment motion, and his substitute counsel failed to respond timely to a second round of Plaintiffs' discovery requests.  These failures, according to Glaser, resulted in the Second State Court S/J Motion, seeking judgment as a sanction.[18]  Glaser notes the First State Court S/J Order denied the Plaintiffs' first motion for summary judgment, and argues the Court's immediately subsequent order refers only to the Second State Court S/J Motion, which requested judgment as a sanction.  This second Order, Glaser contends, is the only Order reinstated on remand, and constitutes an order regarding breach of contract, not

---

of $3,955, plus unpaid wages of $9,609.  However, as noted above, the *Entry of Judgment*, also entered March 15, 2006, provided for damages in the amount of $164,062.21 for Plaintiffs' compensatory damages, plus an award of $30,000 for exemplary damages.

[18]  The First State Court Summary Judgment Motion and the Second State Court Summary Judgment Motion are attached as Exhibits 5 and 6 to *Defendant Martin Glaser's Response to Plaintiff's Motion for Summary Judgment* (Docket No. 97).

fraud.  Therefore, Glaser maintains, issues pertaining to §§ 523(a)(2), (a)(4), and (a)(6) were not actually litigated in the state court, nor were such issues necessary to the state court's findings as to breach of contract.  Further, Glaser states the doctrine of *res judicata* prevents the fraud claims from being tried in this Court, because the Plaintiffs abandoned such claims by failing to pursue them in the state court.

## Defendant's Motions for Summary Judgment

Glaser filed a *Motion for Summary Judgment* on August 29, 2011 (Docket No. 81), and an *Amended Motion for Summary Judgment* on August 30, 2011 (Docket No. 83) (the "Motions").  Glaser's Motions note the state court judgment on liability entered as a sanction against Glaser because Glaser's counsel failed to answer a second set of discovery from Plaintiffs and failed to answer a motion for partial summary judgment. Glaser also points out the partial summary judgment pertained to two of the Plaintiffs' state court claims, one for breach of contract (the fourth claim) and the second for declaratory judgment (the tenth claim).  According to Glaser, the Court of Appeals expressly vacated all the orders entered, and the only order re-entered by Judge Munsinger on remand was the September 20, 2005 Order, which addressed only the breach of contract claim asserted in the State Court Action.  Therefore, Glaser asserts the findings of fact and conclusions of law contained in the Remand Order are no longer valid and the Plaintiffs cannot rely on them.  Accordingly, Glaser contends there are no orders entered by the state court on remand meeting the § 523 elements.  Further, Glaser argues this Court has the right to look behind the state court judgment remand to the state court's actual factual determinations to investigate whether such findings meet the requirements of § 523(a)(2), (4), or (6).

With respect to the § 523(a)(2) claim, Glaser states a creditor must establish the following to show fraud:  1) misrepresentation, fraudulent omission or deceptive conduct on the part of the debtor; 2) knowledge of the falsity or deceptiveness of his statement or conduct; 3) an intent to deceive; 4) justifiable reliance by the creditors on the debtor's statement or conduct; and 5) damages to the creditor proximately caused by its reliance on the debtor's statement or conduct.  He contends intent to deceive requires a finding of guilty scienter or reckless indifference to actual facts.  Glaser states the Plaintiffs have set forth no evidence of either verbal or written misrepresentations that the central object being acquired was gained by fraud.

Specifically, with respect to § 523(a)(2), Glaser argues the Plaintiffs were provided with access to all business records of the corporation and the predecessor sole proprietorship business, bank accounts, tax returns, and they had in fact sought the advice of an attorney and their mother, who had particular skills in understanding tax returns.  No material fact regarding M & G was ever hidden, not disclosed, or otherwise concealed from Plaintiffs.  According to Glaser, Plaintiffs' failure at due diligence, reliance on the wrong professionals, or their anger over the proposed sale of Glaser's stock interest to a third party, do not demonstrate fraud, but rather a simple breach of

contract dispute.  Therefore, Glaser requests summary judgment in his favor on this claim.

Regarding the § 523(a)(4) claim, Glaser contends the Plaintiffs inspected all of the records of the business, the checks received by Plaintiff Thrailkill, and the notice of sale and offer to sell his stock to Plaintiffs.  Glaser asserts the state court never received evidence of these facts because the court focused on the breach of contract claim.  When the partial summary judgment (for breach of contract and declaratory judgment on the "first right of offer") was not answered by Glaser's counsel, and the second set of discovery was not answered, the court sanctioned Glaser, and entered judgment on partial summary judgment as a penalty.  Glaser argues this Court must focus on the actual facts of the case, which will reveal it is a matter of simple breach of contract dispute.

Further, Glaser disagrees that the parties' agreement gave Glaser nothing for his 100% stock interest.  Therefore, he denies he embezzled the purchase price, and denies the Plaintiffs' assertion the purchase price was solely to recapitalize the business.  Glaser states the stock interest was the asset for which Plaintiffs undertook substantial due diligence, and for the Plaintiffs to argue now the stock interest was not what they were purchasing is disingenuous.  Glaser argues there is no credible evidence showing the Plaintiffs' stock interest was worthless.  Accordingly, Glaser's payment to himself from M & G in the amount of $100,000 for his sole proprietorship interest was not embezzlement.  He was entitled to the funds he received. Glaser therefore requests summary judgment in his favor and against Plaintiffs on their § 523(a)(4) claim.

With respect to the § 523(a)(6) claim, Glaser argues the "right of first refusal" or "right of first offer" was simply a contract right.  The state court ruled, on partial summary judgment, that Glaser breached his contract with Plaintiffs, despite the fact the letters of intent between the parties describe a "first right of refusal" and the Plaintiffs' right to become majority shareholders within five years.  Glaser states the stock purchase agreement clearly indicates both the timing and amount of stock offered to make Plaintiffs majority shareholders were completely at the discretion of Glaser, and there was no evidence any breach was either malicious or intentional. Glaser maintains no property was actually taken from the Plaintiffs.  Rather, their interest was a contract right, not a property right, and a simple breach of contract does not make a judgment nondischargeable.  Moreover, Glaser argues, this case is not an intentional tort case, and no order that survived the appellate court holds Glaser acted with the intent to cause injury to Plaintiffs.  Accordingly, Glaser asserts he is entitled to summary judgment in his favor on this claim.

The *Response of Plaintiffs to Defendant Martin (sic) Glaser's Motion for Summary Judgment and Motion to Strike Certain Documents Filed by Defendant* (Docket Nos. 95 and 96) alleges Glaser is attempting to relitigate the State Court Action,

in violation of the *Rooker-Feldman* Doctrine and the doctrine of *res judicata*. They assert the Court of Appeals' Order did not vacate the factual findings of the March 15, 2006 Order. Moreover, they argue Glaser relies on the incorrect legal standard for addressing the burden of proof in a summary judgment motion and for a claim under § 523(a)(6), and fails to address the fact the March 15, 2005 Order was based on fraud. In addition, the Plaintiffs requested an order striking the supporting documents as untimely.

## DISCUSSION

Summary judgment is to be granted if the pleadings, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[19] In applying this standard, the Court is to "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion."[20] The party seeking summary judgment bears "the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of [the record] 'together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[21]

## A.    The Effect of the Court of Appeals Ruling

As outlined in the Background Facts, above, the Jefferson County District Court denied the attempt to dismiss Glaser's and M & G's first counterclaim, in which Glaser and M & G alleged the Plaintiffs intentionally interfered with Glaser's right to sell his stock in M & G, as well as the Plaintiffs' attempt to seek summary judgment in their favor on their breach of contract claim (fourth claim), and their claim for declaratory judgment as to the rights of the parties with respect to the parties' stock purchase agreement (tenth claim).

The Second State Court S/J Motion was premised upon an allegation that the Plaintiffs' requests for admission were not timely answered and therefore, they should be deemed admitted under COLO. R. CIV. P. 36(b), and asserted Glaser exhibited a pattern of delay and evasion of their discovery and disclosure obligations throughout the case which prejudiced their interests. Therefore, the Plaintiffs asked for dismissal of the Defendants' affirmative defenses and second, third, fourth, and fifth counterclaims, and also sought the entry of judgment on liability in favor of the Plaintiffs and against the Defendants, M & G and Glaser.

---

[19] FED.R.CIV.P. 56 , made applicable to bankruptcy proceedings by FED.R.BANKR.P. 7056.

[20] *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

[21] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In granting the Second State Court S/J Motion, Judge Munsinger found no response had been filed to the Motion and the subject requests for admissions must be deemed admitted pursuant to COLO. R. CIV. P. 36.[22]  The Court notes the Second State Court S/J Motion referred to liability generally on the Plaintiffs' first through thirteenth claims for relief.  It did not, as did the First State Court S/J motion, seek relief only as to the Plaintiffs' fourth and tenth claims for relief.  When the Court of Appeals stated the Defendants "appeal a partial summary judgment, a dismissal order, and the judgment entered following a damages hearing, all in favor of plaintiffs," the Second State Court S/J Motion could have been the only partial summary judgment to which it could have referred.  The dismissal order to which the Court of Appeals referred was the November 8, 2005 Order in which Judge Munsinger found "[l]iability has been entered in favor of Plaintiff on their fourth claim in addition to all other claims," and granted the Plaintiffs' Motion to Dismiss Defendants' First Counterclaim for Relief.  The judgment following a damages hearing to which the Court of Appeals referred was the March 15, 2006 Damages Order and accompanying Damages Judgment.[23]

Thus, identifying the exact judgments appealed is necessary to determine the effect of the Court of Appeals' ruling, as well as to determine which order was reinstated by Judge Munsinger on June 5, 2008 in his Remand Order.  Since the Second State Court S/J Motion requested a finding Glaser and M & G liable on all claims, not just the fourth and tenth claim, and since the ruling on the Second State Court S/J Motion was the only ruling which could have been reinstated by Judge Munsinger, this Court finds a final ruling on liability exists on all the claims raised by the Plaintiffs' Verified Second Amended Complaint, including the claims for fraud and breach of fiduciary duty.  Therefore, for purposes of the matters before this Court, the effect of the Court of Appeals' ruling was to vacate the order granting the Second State Court S/J Motion for Summary Judgment, and to remand the matter for further proceedings.  On such further proceedings, the trial court reinstated the order granting that Motion.

The question before this Court then becomes whether the finding that Glaser was liable on all the claims raised by the Plaintiffs in the State Court Action requires a finding by this Court that damages arising from such liability are nondischargeable under §§ 523(a)(2), (4), and (6) pursuant to the doctrines of collateral estoppel or *res judicata*.

---

[22]  See Docket No. 88, Supporting Documents relating to Glaser's *Amended Motion for Summary Judgment* (Docket No. 83), Jefferson County District Court Order of September 20, 2005.  See also *Glaser's Response to Plaintiffs' Motion for Summary Judgment* (Docket No. 97),  Exhibit B thereto, Order of Jefferson County District Court dated September 20, 2005.

[23]  See Footnote No. 9.

**B.     The Application of Collateral Estoppel**

Collateral estoppel, or issue preclusion, applies when an issue of fact or law is actually litigated to a valid and final judgment, and the determination of the issue was essential to the judgment.[24]  In *Arizona*, the United States Supreme Court found where a judgment is entered by default, confession, or consent, an issue has not been "actually litigated" for purposes of collateral estoppel.[25]

This finding would appear to support Glaser's contention collateral estoppel should not apply to the State Court Action, since the initial judgment of liability entered as a sanction.  However, the Tenth Circuit Court of Appeals recently clarified the issue, stating a "default" as discussed in the Restatement and adopted by the *Arizona* Court does not refer to a default entered as a sanction:

> The context of the language quoted from the Restatement, however, makes clear that the type of "default" being considered was not a default imposed as a sanction but a default resulting from an affirmative decision not to contest a matter. The opening paragraph of comment e to § 27 of the Restatement provides the rationale for not applying issue preclusion to a defaulting party:
>
>> A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action. There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.

---

[24] *Arizona v. California*, 530 U.S. 392, 414 (2000) (citing Restatement (Second) of Judgments § 27, at 250 (1982)).  *See also B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, 439 F.3d 653, 662 (10th Cir. 2006).

[25] *Id.*, at 414 (citing Restatement (Second) of Judgments § 27 cmt. e).

Clearly, this passage is referring to unraised or uncontested issues. When, in contrast, the opposing party has already been subjected in an earlier proceeding to "oppression or harassment" that caused the court to declare a default on an issue, there is a compelling reason not to impose on that party again with respect to the same issue. And basing preclusion on a default imposed as a sanction can hardly "discourage compromise" or tend "to intensify litigation."[26]

"The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, [28 U.S.C. § 1738]."[27] "This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered."[28] In Colorado, four elements are required for issue preclusion: 1) the issue sought to be precluded must be identical to an issue actually and necessarily decided at a prior proceeding, 2) there must have been a final judgment on the merits at the first proceeding, 3) there must be identity of parties or privity between the parties against whom the doctrine is asserted, and 4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.[29]

Using these guidelines, the Court finds the case at bar to be similar to a 2007 case in which Judge Lewis Babcock of the United States District Court for the District of Colorado provided a clear and detailed discussion of collateral estoppel in the dischargeability context.[30] In *Riggle*, the plaintiffs entered into a homebuilding contract with the debtor and the debtor's construction company. Disputes arose, and the plaintiffs filed suit against the debtor in the Teller County District Court, alleging fraud, misrepresentation, conversion, and breach of contract. The debtor did not respond to the complaint, and the plaintiffs' subsequent motion for summary judgment was granted. After the submission of affidavits by the plaintiffs, judgment entered in the state court against the debtor in the amount of $37,915 for breach of contract and $266,293 for fraud, misrepresentation, and conversion.

Thereafter, the debtor filed a Chapter 7 petition, and the plaintiffs filed an adversary proceeding seeking a ruling the fraud portion of the judgment was

---

[26] *Melnor v. Corey (In re Corey)*, 583 F.3d 1249, 1251 (10th Cir. 2009)"), *cert. denied*, ___ U.S. ___, 130 S.Ct. 1739, 176 L.Ed.2d 213 (2010) (quoting Restatement (Second) of Judgments § 27 cmt. e).

[27] *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).

[28] *Id.*

[29] *Stanton v. Schultz*, 222 P.3d 303, 307 (Colo. 2010); *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84–85 (Colo.1999); *People v. Zukowski*, 260 P.3d 339, 346 (Colo. App. 2010).

[30] *Elletson v. Riggle (In re Riggle)*, 389 B.R. 167 (D. Colo. 2007).

nondischargeable under §§ 523(a)(2), (4), and (c), and asserting the state court judgment should be given collateral estoppel effect.  The Bankruptcy Court subsequently granted partial summary judgment in favor of the plaintiffs finding the issue of fraud was actually litigated in the state proceeding.

In his decision to reverse and remand the summary judgment, Judge Babcock found the state court summary judgment in the plaintiff's favor constituted a default judgment because the debtor had never responded to the plaintiffs' motion for summary judgment.[31]  Judge Babcock noted the Colorado Supreme Court has not yet determined the collateral estoppel effect accorded to prior default judgments, but the Colorado Court of Appeals appears to have indicated collateral estoppel bars the relitigation of any issue decided by a prior default judgment regardless of the extent of the defaulting party's participation in the earlier lawsuit.[32]  However, Judge Babcock pointed out the Court of Appeals case really addressed *res judicata*, not collateral estoppel, and went on to adopt the reasoning in *In re McMahon*, 356 B.R. 286, 294-296 (Bankr. N.D. Ga. 2006) (interpreting Colorado law) in discussing the preclusive effect of a prior default judgment.[33]

Judge Babcock concluded:

The bankruptcy court should look beyond the state judgment to the entire record from the state proceeding to ensure that all issues given preclusive effect have been actually litigated and presented. *In re Dunston*, 146 B.R. 269, 278 (D. Colo.1992).  The court can deny preclusive effect to the state judgment if the findings were conclusory or the record, pleadings, and affidavits do not enable the bankruptcy court to discern the basis of the facts. *Id.*  Where the parties never complete discovery, and the documents, interrogatories, and answers to interrogatories fail to clarify all the facts, the bankruptcy court is under a duty to litigate anew the factual issues necessary to the determination of dischargeability.  *See id.*  However, where the party seeking to apply collateral estoppel presents evidence that the prior court rendered findings based on actual evidence or that the parties engaged in a meaningful assessment of the facts and then the defendant made a conscious choice not to contest the entry of judgment, a court may appropriately find the issue was actually litigated.[34]

---

[31]  *Id.*, at 173.

[32]  *Id.*, at 174 (citing *Ortega v. Bd. of County Comm'rs of Costilla County*, 683 P.2d 819, 820–21 (Colo. App.1984)).

[33]  *Id.*, at 174-75.

[34]  *Id.*, at 175.

Accordingly, Judge Babcock reversed and remanded the partial summary judgment before him, because "although the state judgment appears to make findings of fact, it is clear from the record that these findings were not based on the court's meaningful assessment of the facts or a weighing of actual evidence."[35]  Although he recognized an exception exists where a debtor's substantial participation in litigation over an extended period of time, engaging in dilatory and deliberately obstructive conduct resulting in default as a discovery sanction, can satisfy the "actually litigated" requirement, he pointed out that such exception was generally applied only to previous federal actions, not to state court actions.[36]  By contrast:

> Under Colorado law, discovery sanctions may be imposed for simple negligence. *Kwik Way Stores, Inc. v. Caldwell*, 745 P.2d 672, 677 (Colo.1987).  Even sanctions as severe as default judgment do not require a finding of willfulness or bad faith on the part of the noncomplying party. *See In re Bass*, 142 P.3d 1259, 1264 (Colo. 2006); *Kwik Way*, 745 P.2d at 677; *Callahan v. Wadsworth*, 669 P.2d 141, 142 (Colo. Ct. App.1983).  Thus, the discovery sanctions alone are not evidence of serious or obstructive conduct warranting an exception to the "actually litigated" requirement. Likewise, in the absence of a factual showing of the debtor's misconduct, the fact that Appellant litigated his claim in some form or another for two years before the entry of judgment is insufficient to show the underlying claim was actually litigated. *See In re Jordana, supra*, 232 B.R. at 477 (citing *Antonakis*, *supra*, 207 B.R. at 204–06).  In reviewing a motion for summary judgment, I must draw all inferences in favor of the nonmoving party. *See Dodge, supra*, 203 F.3d at 1197.  I cannot infer from the mere fact that discovery sanctions were levied against Appellant in the state proceeding that these sanctions were levied because of Appellant's willful, bad faith, or other seriously obstructive conduct.  Colorado law provides ample authority for the trial court to levy sanctions in the absence of such wrongdoing.  Thus, even if the Colorado Supreme Court were to adopt the "serious obstructive conduct" exception, the exception would not apply to the facts here.[37]

While this Court generally agrees with the rationale of *Riggle*, based on the circumstances of this case, the Court finds the liability judgment of the Second State Court S/J Motion constitutes "actual litigation" of the issues involved in dischargeability.  Specifically, the Court notes the record reflects Glaser filed an answer to the state court complaint, and filed other pleadings in that case.  Further, he participated in proceedings before the court, including the two-day hearing on damages following entry

---

[35] *Id.*, at 176.

[36] *Id.*, at 176-177 (citing, *inter alia*, *Ries v. Sukut (In re Sukut)*, 357 B.R. 834, 839 (Bankr. D. Colo. 2006).

[37] *Id.*, at 177-78.

of the liability judgment.[38]  Moreover, he filed an appeal of Judge Munsinger's March 15, 2006 Damages Judgment.  Finally, on remand, Judge Munsinger made factual findings based on evidence other than the requests of admission in controversy.   Accordingly, under the framework for analysis set forth in *Riggle*, the Court finds the doctrine of collateral estoppel applies, and further finds collateral estoppel warrants granting the Plaintiffs' Motions for Summary Judgment, and awarding judgment against Glaser as to dischargeability of the Plaintiffs' debt, pursuant to §§ 523(a)(2), (4), and 6.  Those exceptions to discharge have been shown because the state court found liability on claims based on fraud and breach of fiduciary duty, and found Glaser's conduct to have been willful and wanton so as to justify the award of attorneys' fees under COLO. REV. STAT. §§ 13-21-102 and 13-17-102.

## C.    Application of *Res Judicata*.

Although the application of collateral estoppel results in the award of summary judgment in favor of the Plaintiffs, in the interest of completeness, the Court will also discuss the issues of *res judicata*, *Rooker-Feldman*, and statute of limitations.  In addition, the Court will address the Plaintiffs' Motion to Strike.

Glaser argues the Plaintiffs' state law claims included claims for fraud, embezzlement, and willful and wanton injury, and such claims were abandoned when the Plaintiffs failed to pursue them after the Court of Appeals ruling and the remand to the Jefferson County District Court.  Since such claims could have been litigated, Glaser asserts the doctrine of *res judicata* now prevents the Plaintiffs from raising them in this Court.  Similarly, the Plaintiffs contend the State Court Action resulted in resolution of the claims in that action, and any attempt to defend against them in this Court is barred by *res judicata*.

The doctrine of *res judicata*, or claim preclusion, generally applies in bankruptcy proceedings.[39]  In Colorado, *res judicata* requires a showing of: "(1) finality of the first judgment; (2) identity of subject matter; (3) identity of claims for relief; and (4) identity or privity between parties to the actions."[40]  Similarly, in a federal context, the Tenth Circuit has held *res judicata* requires the satisfaction of four elements:  1) the prior suit must have ended with a judgment on the merits; 2) the parties must be identical or in privity;

---

[38]  Indeed, the Court of Appeals noted Glaser participated in a hearing on the Second State Court S/J Motion, during which "the trial court inquired, '[t]ell me why I should not deem those admitted' and asked defendants to show good cause."  Defendant Martin Glaser's Response to Plaintiffs' Motion for Summary Judgment, Exhibit D thereto, Opinion of Colorado Court of Appeals dated December 6, 2007 (docketed in this adversary proceeding as Docket No. 98), p.7.

[39]  *Padilla v. Griego (In re Griego)*, 64 F.3d 580, 584 (10th Cir. 1995) (citing *DePaolo v. United States (In re DePaolo)*, 45 F.3d 373, 376 (10th Cir. 1995).

[40]  *Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo. 1999).

3) the suit must be based on the same cause of action; and 4) the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit.[41]  When these elements are met, "*res judicata* forecloses all that which might have been litigated previously . . . ."[42]

The instant case meets all but the third element of both the Colorado and Tenth Circuit tests.  Specifically, *res judicata* is not applicable to claims and defenses which concern the dischargeability of a claim previously reduced to judgment in a state court.[43]  Dischargeability claims are unique and involve different issues from those in state court proceedings.[44]  A dischargeability action does not dispute the validity of the underlying debt, but instead addresses "the new defense of bankruptcy which [the debtor] has interposed between [the creditor] and the sum determined to be due him."[45]  However, *res judicata* may prevent a bankruptcy court from reexamining matters other than the dischargeability, such as the validity and the amount of a debt.[46]

In this case, the matter before the Court is whether the debt owed to the Plaintiffs is dischargeable.  As noted in *Brown*, such a determination involves unique questions not found in the State Court Action.  Accordingly, the Court finds *res judicata* does not prevent the parties from engaging in this adversary proceeding, although the similar doctrine of collateral estoppel mandates an award of summary judgment in favor of the Plaintiffs.

**D.     The Application of the *Rooker-Feldman* Doctrine.**

In like fashion, the *Rooker-Feldman* Doctrine does not preclude this Court from determining, through summary judgment, the dischargeability claims in this action.  The Tenth Circuit Court of Appeals has described the doctrine as follows:

> Under the *Rooker-Feldman* doctrine, the federal courts lack subject matter jurisdiction to hear appeals from final judgments of state courts or to adjudicate claims that are inextricably intertwined with those judgments.  *See*

---

[41]  *Nwosun v. General Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997) (citing *Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 686 (10th Cir. 1992)).

[42]  *Brown v. Felsen*, 442 U.S. 127, 139 n. 10 (1979).

[43]  *Brown v. Felsen*, 442 U.S. at 138-39; *RTC v. McKendry (In re McKendry)*, 40 F.3d 331, 335 (10th Cir. 1994)

[44]  *Brown, supra*, at 134-35.

[45]  *Id.*, at 133.

[46]  *State of Colorado v. Jensen (In re Jensen)*, 395 B.R. 472, 491 (Bankr. D. Colo. 2008) (citing *Griego*, 64 F.3d at 584; *In re Comer*, 723 F.2d 737, 740 (9th Cir.1984)).

*Rooker v. Fid. Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 486-87, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The *Rooker-Feldman* doctrine has been applied to cases involving a bankruptcy court's granting relief from the automatic stay to allow a state court case to proceed. *See In re Reitnauer*, 152 F.3d 341, 344 (5th Cir. 1998) (holding that after a bankruptcy court partially lifted the automatic stay to allow state court proceedings to continue, the federal district court "violated the letter of the *Rooker-Feldman* doctrine by sitting in appellate review of the state court judgment"); *see also In re Wilson*, 116 F.3d 87, 90 (3rd Cir. 1997) ("The bankruptcy court is also prohibited from reviewing the state court's judgment by the *Rooker-Feldman* doctrine, which prohibits lower federal courts from sitting as effective courts of appeal for state court judgments.").[47]

The Supreme Court has stated the *Rooker-Feldman* doctrine precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[48] In addition, as noted by Judge A. Bruce Campbell of this Court: "*Rooker-Feldman* concerns the absence of appellate jurisdiction of federal trial courts to review rulings of state courts."[49] Further, according to the Tenth Circuit Bankruptcy Appellate Panel: "[t]he fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment."[50]

Here, the injury alleged is this – the Plaintiffs assert the discharge of the judgment they received in the State Court Action will injure them because the debt arises from conduct which would render discharge improper under the Bankruptcy Code. As explained by Judge Elizabeth E. Brown of this Court:

The *Exxon Mobil* Court further emphasized that *Rooker-Feldman* does not stop a federal court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent

---

[47] *Ebel v. Ebel (In re Ebel)*, 139 Fed. Appx. 26, 28-29 (10th Cir. 2005) (not published in F.3d); *see also Bolden v. City of Topeka, Kansas*, 441 F.3d 1129, 1139 (10th Cir. 2006).

[48] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[49] *In re Barrett*, 377 B.R. 667, 672 n.3 (Bankr. D. Colo. 2007). *See also Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994) (holding the doctrine prohibits "what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.").

[50] *Hill v. Putvin (In re Putvin)*, 332 B.R. 619, 623 (10th Cir. BAP 2005) (citations and internal quotation marks omitted).

claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293, 125 S.Ct. 1517 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).   In other words, when the federal court tries a matter anew and reaches a conclusion contrary to a judgment rendered by a state court, without concerning itself with the *bona fides* of the prior judgment, it is not conducting appellate review.   *Bolden*, 441 F.3d at 1143. It is only when the claim or defense raised seeks specifically to attack the prior state court judgment or seeks relief for injury caused by the state court judgment that the *Rooker-Feldman* doctrine applies.[51]

In the instant case, as in *Jensen*, the Plaintiffs are pursuing an independent claim seeking a determination of dischargeability under § 523, and Glaser is defending that claim.   Therefore, the Court finds the *Rooker-Feldman* Doctrine does not prevent this Court from exercising jurisdiction over the case.

## E.   The Application of the Colorado Statute of Limitations.

Glaser argues this adversary proceeding should be barred by the three-year statute of limitations contained in COLO. REV. STAT. § 13-80-101(c), because the claims on which the State Court Action was based arose from February 2004 through September 2004.   Since the Plaintiffs did not, after the June 5, 2008 remand order, seek reinstitution of the state court's March 15, 2006 Order containing findings of fact and conclusions of law, Glaser contends they may not bring any claims related to fraud in this Court, as they were abandoned over three years ago.

The Court finds this argument without merit based on its analysis of the Court of Appeals' ruling and the order on remand, above.   Specifically, the Second State Court S/J Motion was the motion granted by Judge Munsinger and appealed by Glaser.   The order granting that Motion found Glaser and M & G liable on all claims, including claims asserting fraud and breach of fiduciary duty.   Thus, this was the order vacated by the Court of Appeals and later reinstated on remand, and constitutes a determination of liability on all the claims raised by the Plaintiffs in the State Court Action.   Therefore, the Plaintiffs' claims were not abandoned, and have continued to be subject to the order on remand.   Thus, the only question is whether the Plaintiffs complied with the Bankruptcy Code's time limit for bringing an action seeking a determination as to the dischargeability of those claims.   The underlying bankruptcy case was filed on February 23, 2009, and the deadline for filing an adversary proceeding objecting to discharge or dischargeability was May 26, 2009.   The Plaintiffs filed the instant case on May 26, 2009.   Thus, the matter is clearly timely.

---

[51] *Jensen*, *supra*, at 489.

F.     **Plaintiffs' Motion to Strike.**

As part of the *Response of Plaintiffs to Defendant Martin (Sic) Glaser's Motion for Summary Judgment* (Docket Nos. 95 and 96), the Plaintiffs request the Court to strike Glaser's *Amended Motion for Summary Judgment* (Docket No. 83) and supporting documents as not timely filed and not allowed by the Court's September 1, 2011 order granting an extension of time.  The Court notes the dispositive motion deadline in this case was extended to August 29, 2011, at the Court's status and scheduling conference held June 14, 2011.  Glaser's initial *Motion for Summary Judgment* (Docket No. 81) was filed August 29, 2011, and the *Motion for Extension of Time* (Docket No. 82) alleged equipment difficulties experienced by Glaser's counsel and sought a one-day extension. The difficulties were apparently resolved, and the Amended Motion and exhibits were filed only one day later, on August 30, 2011.  The Court finds the complexity of the state court record, together with the fact that many of the documents presented in support of the *Amended Motion for Summary Judgment* were also presented or referred to by the Plaintiffs, creates reasonable cause for allowing the filing of the *Amended Motion for Summary Judgment* and accompanying exhibits, particularly since the delay was only one day later than the dispositive motion deadline.

G.     **Determination of the Thrailkill Trustee's Interest**

Janice Steinle, the Trustee in In re Darrell Glen Thrailkill, Chapter 7 Case No. 09-10969 SBB, has not filed an answer to the Amended Complaint, nor has she filed a proof of claim in Glaser's case.  However, in response to an Order for Status Report dated November 8, 2011 by Judge Brooks, she filed a Response to Order for Status Report on January 17, 2012 in which she stated:

> Trustee has been in regular contact with Debtor's attorney, Kimber Smith, and Trustee is actively monitoring pending litigation (not showing on Pacer as an Associated Case) in Adversary Proceeding No. 09-1291. In that case, Debtor is a Plaintiff and is pursuing a non-dischargeability claim against Marty E. Glaser (underlying case 09-12600). Trustee has consulted in conjunction with Debtor's counsel and allowed Debtor's counsel to pursue the Adversary Proceeding, with the understanding that if Debtor/Plaintiff is successful, then the bankruptcy estate will share in whatever might be collected by way of judgment. In the Adversary Proceeding (09-1291), cross motions for summary judgment are at issue as of October 26,2011, but there has been no ruling as of yet.[52]

The Court finds the matter of how any judgment collected by Thrailkill will be distributed is an issue to be determined through Thrailkill's bankruptcy case, not through

---

[52]  Chapter 7 Case No. 09-10969 SBB, Docket No. 28.

Glaser's bankruptcy case.  Therefore, the Court will dismiss Claim No. 4 of the Plaintiffs' Amended Complaint.

## CONCLUSION

Based on the above findings and conclusions,

IT IS HEREBY ORDERED the Plaintiffs' Motions for Summary Judgment filed at Docket No. 61 and Docket No. 80 are GRANTED.

IT IS FURTHER ORDERED the Defendant's debt to the Plaintiffs is determined to be nondischargeable, and judgment of nondischargeability shall enter in favor of the Plaintiffs and against the Defendant.

IT IS FURTHER ORDERED the Plaintiffs shall file, on or before May 15, 2012, an affidavit setting forth the damages, interest, and other amounts they wish to be included in the nondischargeable judgment.  The Defendant shall then have until May 26, 2012, to file any objections he may have to the amounts set forth in the affidavit. The Court will set a hearing on any objection if necessary, and upon determination of the correct amount of the judgment, a judgment will enter in this adversary proceeding.

IT IS FURTHER ORDERED Claim No. 4 of the Amended Complaint is DISMISSED.

IT IS FURTHER ORDERED the Defendant's Motions for Summary Judgment filed at Docket No. 81 and Docket No. 83 are DENIED.

IT IS FURTHER ORDERED the Motion to Strike Certain Documents Filed by Defendant, found in the Response of Plaintiffs to Defendant Martin (sic) Glaser's Motion for Summary Judgment, filed at Docket Nos. 95 and 96, is DENIED.

Dated April 30, 2012                          BY THE COURT:

                                              Michael E. Romero
                                              United States Bankruptcy Judge